## LONGHORN ROOFING PRODUCTS, Inc., v. FLINTKOTE CO.

### No. 10667.

Circuit Court of Appeals, Fifth Circuit.

March 17, 1944.

Frank A. Leffingwell and Ralph W. Currie, both of Dallas, Tex., for appellant.

Maurice E. Purnell, of Dallas, Tex., for appellee.

Before HUTCHESON, HOLMES, and LEE, Circuit Judges.

HOLMES, Circuit Judge.

Appellee, a manufacturer of dry felt, by written contract agreed to furnish to appellant its requirements of the product during 1940 upon certain terms and conditions. Deliveries of the felt were made as agreed throughout the year, and the purchase price was paid therefor except that demanded for the December deliveries. In that month appellant calculated that it had overpaid for its purchases during the first six months of the year, and deducted the amount of such alleged overpayments from the payment made for December deliveries. This action was filed by appellee to recover the sum of $5,244.84 so withheld, the court gave judgment for $5,036, and appellant has appealed.

The method used to manufacture the felt involved the use of rags as the principal and basic ingredient. The rags varied widely in the quality of their texture and porosity, as to which they were classified by numbers descending from one to five or six in the order of their usefulness. The supply of rags available to appellee from the territory adjacent to its plant in New Orleans was never quite adequate to satisfy its annual needs, and in consequence it regularly imported from southern Europe other rags, called dark cotton, which were of number 2 quality. Expenses of importation caused the price of dark cotton to be greater than the cost of domestic rags of identical quality.

It was by using this business background as an index that the contract price of the dry felt was determined. The contract in force during the first six months of 1940 provided that the cost price of the felt to appellant during each four-week accounting period should be a fixed conversion charge of $20 per ton, plus an amount equal to the vendor's average cost of a ton of rags composed of 80% of number 2 rags and 20% dark cottons by weight during its four-week accounting period next preceding; that in computing the average cost per ton of rags, only those rags actually received during the preceding period should be taken into account; and, in the event that no rags were so received, the vendor's average cost of a ton of rags calculated in the manner hereinabove set forth during the four-week accounting period next to one preceding should be used in arriving at said price.

After the outbreak of hostilities in Europe, importations from that continent abruptly declined, and the last shipment of dark cotton obtainable by appellee was received by it in November, 1939. Throughout 1940 its supply of dark cotton was limited to its accumulated inventory, and its use as an ingredient in the manufacture of the felt necessarily was limited, but the agreement between the parties did not require the use of any particular ingredient in any particular quantity, and the quality of the product was maintained throughout 1940. It is appellant's contention that, since no dark cotton actually was received

by the appellee during any four-week accounting period next preceding any period in 1940, the computation of the average cost of the rags per ton should have been based upon the cost of the cheaper domestic rags only; that appellee erroneously calculated its costs under the formula including 20% by weight of dark cotton, and by reason thereof demanded and received payments during the first six months of 1940 greater by $5,244.84 than it was entitled to be paid under the contract.

We agree with the court below that the price-fixing provisions of the contract, construed as an integrated and harmonious whole, do not warrant this interpretation. As has been stated, the manufacturer was not required by the contract to use 80% number 2 rags and 20% dark cotton, or any other fixed proportion of rags of any particular quality. It might use 100% of number 2 rags, or 70% number 1 and 30% number 4, or 100% dark cotton, or any other proportion of rags of any grade so long as the quality of its product was maintained, and in each instance it only would be entitled to a price equivalent to the cost during the preceding four-week accounting period of rags of equal weight comprised 80% of number 2 rags and 20% of dark cotton. This price arrangement obviously was designed to cushion the impact upon the parties of a rapidly rising or declining price level in the rag market, and was to be applied whether no dark cotton was used or whether 100% dark cotton was used.

The provision that only rags actually received during the preceding period should be taken into account in arriving at the average cost is not in conflict with this construction of the contract, because, in the event none were received, it was provided that the average cost computed to have obtained during the four-week accounting period immediately preceding the period in which none were received should be applied. Dark cotton actually was received in November, 1939. The average cost of these rags was properly included in the four-week accounting period covering December sales. Since no dark cotton was received in December, the sale price of all felt sold during each four-week accounting period in the first six months of 1940 should have been calculated upon the basis of the actual cost price of the number 2 rags actually received during each preceding four-week period, and the actual cost price of the dark cotton received during the accounting period of November, 1939.

It was upon this basis that appellee billed and collected for its sales during the first six months of 1940, and it was upon this basis that the court below awarded judgment for the sum erroneously withheld.

Accordingly, the judgment appealed from is affirmed.